MEMORANDUM OF DECISION
 ISSUE
This matter comes to this Court by way of a Motion to Dismiss filed by the respondent to an ex-parte restraining order issued by this Court on June 5, 2000. The motion was supported by a Memorandum of Law. The applicant, CAROL D. TREAT, is the maternal grandmother of the minor child, ANDREW VERDAME, born January 23, 1998. The child's parents, RONALD A. VERDAME (the respondent) and JUDITH VERDAME were divorced on February 2, 1999, and later the applicant was appointed his guardian by the Stratford Probate Court on January 14, 2000. An application for ex-parte relief was granted by this Court on April 12, 2000, but was later dissolved when the applicant tailed to seek its extension. Subsequent to that date, another altercation between the child's father and the guardian gave rise to the granting to the current ex-parte relief from abuse which is the subject to this motion. At a hearing before this Court on June 19, 2000, to determine whether or not the temporary order should be extended, the attorney for the respondent challenged the jurisdiction of this Court to grant the restraining order and asked that it be dissolved. The grounds advanced were that the respondent did not fall within any of the statutory categories of persons against whom an applicant is entitled to seek relief under Section 46b-38a (2) C.G.S., in particular, that of a "a person 18 or over related to me by blood or marriage." By way of argument, the respondent claims that the earlier dissolution of his marriage to the applicant's daughter severed any such possible relationship. The Court extended the current order for a period of one month to July 18, 2000, without prejudice to the respondent to offer further evidence as to why the order should not continue, and to give the applicant sufficient time to file a Memorandum of Law in response to the Motion to Dismiss.
 LAW
The sole means to challenge the jurisdiction of the court is by means of a motion to dismiss. Connecticut Practice Book, Section 10-30 et. seq.; Section 59 Stephenson's Connecticut Civil Procedure, Third Edition, pp. 192-93. The respondent alleges that the Court lacked jurisdiction to grant the relief requested because there was no longer a relationship, by either "blood or marriage," between him and the applicant due to the dissolution of his marriage to the applicant's daughter. While it may be argued that a legal relationship no longer exists arising out of the marriage, the fact remains that his blood and her blood both run through the veins of the minor child. Perhaps, it is CT Page 8209 more accurate state that the parties have each contributed their DNA to the minor child. While it is normal to trace consanguinity through a common ancestor, this Court sees no reason ignore the obvious familial connection by considering the common progeny. This Court finds that, in fact, a relationship between the applicant and the respondent does exist by blood.
However, even if the this were not the case, the Court must look to the purpose and intent of the Legislature in enacting the law and to give effect to it in a practical and equitable manner. The plain purpose of the law was to offer protection from violence to persons in family situations, later extended to persons having more remote personal relationships, including a dating relationship. In fact, the courts have become increasingly aware of the obvious shift from the traditional intact family model to less traditional relations, and they have exhibited an increasing degree of flexibility in this regard. The leading case in this area is Castagno v. Wholean, 239 Conn. 336 (1996) which arose out of a motion to dismiss in a matter involving a claim for grandparent visitation under Section 46b-56 C.G.S. At footnote 15 on page 352, the Court referred the "myriad factual circumstances" and fluidity surrounding the definition of family, which has come to include, ". . . various configurations of parents, stepparents, adoptive parents andgrandparents. . . ." (emphasis added). Moreover, in that case the Connecticut Supreme Court questioned whether or not the welfare of minor children is best served by a "narrow definition" of family. See also,Laspina-Williams v. Laspina Williams, 46 Conn. Sup. 165, 170, (Citing Castagno). This Court believes that the same logic applies with equal force in this situation.
Until a court determines otherwise, both parents are the coequal guardians of the person of their minor children. 46a-606, [45a-606], C.G.S. Moreover, there is a presumption that as between a natural parent and another person, the natural parent is the preferred party to act as guardian. 46b-56b, C.G.S. However, where the courts have intervened and placed the custody of a minor in persons other than the natural parent, those so appointed, as here, stand in loco parentis, with all of the rights and duties of the natural parent. Where, as here, the grandmother (former mother-in-law) has been granted guardianship of the minor child, she has assumed the role of parent. By statute, "guardianship" includes:
(A) The obligation of care and control; and
 (B) the authority to make major decisions affecting the minor's welfare, including, but not limited to, consent determinations regarding marriage, CT Page 8210 enlistment in the armed services and major medical, psychiatric or surgical treatment. 46a-604, [45a-604], C.G.S.
Accordingly, even if the Court were to find that the applicant does not fall within the category which she checked on the application for relief, the Court does further find that the respondent clearly falls within the category of "parent of my child." 46a-38a (2)(B) C.G.S. From a purely practical standpoint, it is in the best interest of the minor child that the applicant, as guardian, should be allowed to perform her parental duties without interference and without any violence or threats of violence from a person who will undoubtedly seek the restoration of his own full parental rights at some future date.
 ORDER
IT IS HEREBY ORDERED:
That the Respondent's Motion to Dismiss is denied without prejudice to his right to present evidence at a hearing on July 18, 2000, as to why the restraining order should not continue.
THE COURT
 By ___________________ Shay, J.