CYNTHIA STERLING RUSSELL ET AL. *v.* YALE
UNIVERSITY ET AL.
(AC 18067)

Lavery, Sullivan and Daly, Js.

Argued April 28—officially released August 24, 1999

*David F. Sherwood*, with whom was *John H. Peck, Jr.*, for the appellants (plaintiffs).

*Mark R. Kravitz*, with whom were *David J. O'Callaghan* and, on the brief, *William J. Doyle* and *Dorothy K. Robinson*, for the appellee (named defendant).

LAVERY, J. The plaintiffs, an heir of the settlor of a charitable trust,[1] alumni donors[2] and students[3] of the named defendant, Yale University (Yale), appeal from the judgment of dismissal rendered by the trial court in granting Yale's motion to dismiss, which asserted that the trial court lacked subject matter jurisdiction on the ground that the plaintiffs lacked standing. On appeal, the plaintiffs claim that the trial court improperly granted Yale's motion to dismiss because, where the attorney general[4] elects not to participate in a proceeding involving a charitable trust, a person with a "special interest" may appear on behalf of the trust to protect the interests of the beneficiaries and that the plaintiff heir, alumni donors and students have the special interest necessary to confer standing on them. We affirm the judgment of the trial court.

The following facts are necessary for our resolution of this appeal. Yale is a nonprofit corporation organized pursuant to a 1745 charter, which was reconfirmed in

[1] Cynthia Sterling Russell is an heir and claimed successor in interest to John W. Sterling, benefactor of the named defendant, Yale University.

[2] The following plaintiffs are graduates of and donors of monetary gifts to the Yale divinity school: David R. Adams, Tabithe Arnold, Gilmary Bauer, Alvord Beardslee, Cecily Broderick y Guera, David E. L. Brown, Alice Chapman, J. Shannon Clarkson, Rebecca Clouse, George Cole, J. Ann Craig, Cornelia Dinnean, E. Odell Disher, Elaine Fitzpatrick, Karin Fowler, John M. Gessell, Jeanne Hein, Norvin Hein, Emily Holcomb, Jamie Holmes, Mark Hulsether, Laurence C. Judd, Ann McKee, David Maxwell, Wilma J. Reichard, Dale Rosenberger, Cynthia Russell, Beverly Thompson-Travis, Elgin W. Watkins, Eric Wefeld, Chester Wickwire and Jan Witman.

[3] The following plaintiffs were matriculated at the divinity school at the time the cause of action was commenced: Matthew Barlow, Heather D. Boonstra, Nancy Eggen, Matthew Fitzgerald, Jamal Johnson, Susan McCone, James Montgomery, Stephen Murray, Amy B. Perry, Margaret Reichard and Charlotte White.

[4] The attorney general was named as a defendant based on the allegation that he is a necessary party representing the public interest. The attorney general did not commence any action against Yale based on the subject of this action and did not participate in this appeal.

article eighth, § 3, of the constitution of Connecticut in 1965. The settlor, John W. Sterling, died in 1918. At that time, he left, in trust, money for the erection of a building or buildings that would constitute a fitting memorial reflecting his gratitude and affection for his alma mater, Yale. The trustees were given broad discretion in the disposition of these funds and directed, if their discretion made it advisable, to consult with Sterling's sisters with regard to the use of the funds. The will directed that the money not be used for the purchase of land or as part of Yale's general fund. In 1930, the Sterling trustees voted to contribute money for the erection and maintenance of the divinity school quadrangle that bears Sterling's name. No other restrictions existed in the will and no property rights were reserved for Sterling's heirs by the will.

The divinity school is one of Yale's graduate professional schools, which educates men and women for the Christian ministry and provides theological education for persons engaged in other professions. Prior to the commencement of this action, the president of Yale appointed a committee to undertake a comprehensive study of the divinity school and its future. In late 1996, the Fellows of the Yale Corporation approved certain recommendations, as made to them by the president and dean of the divinity school, calling for the reorganization of the divinity school, including the demolition of large portions of the Sterling Divinity Quadrangle.

The plaintiffs took exception to the reorganization and instituted this action seeking a temporary and permanent injunction enjoining Yale from carrying out the reorganization, a declaratory judgment that Yale's reorganization plan constitutes an abuse of discretion as a trustee of a public charitable trust, and an accounting of all gifts and donations Yale received for the benefit of the divinity school and of charges against the divinity

school's endowment. Yale moved to dismiss the complaint on the ground that the plaintiffs lack standing to bring suit. The trial court granted the motion to dismiss, and the plaintiffs appealed. Additional facts will be addressed as necessary.

"It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment. . . . A party pursuing declaratory relief must . . . demonstrate, as in ordinary actions, a justiciable right in the controversy sought to be resolved, that is, contract, property or personal rights . . . as such will be affected by the [court's] decision. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. . . . The conclusions reached by the trial court cannot be disturbed on appeal unless the subordinate facts do

not support them. . . . Where a plaintiff lacks standing to sue, the court is without subject matter jurisdiction." (Citations omitted; internal quotation marks omitted.) *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 578–80, 668 A.2d 688 (1995).

"A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. *Barde* v. *Board of Trustees*, 207 Conn. 59, 63, 539 A.2d 1000 (1988). A motion to dismiss raises the question of whether a jurisdictional flaw is apparent on the record or by way of supporting affidavits. *Bradley's Appeal from Probate*, 19 Conn. App. 456, 461–62, 563 A.2d 1358 (1989)." *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997).

Although *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 243 Conn. 1, 699 A.2d 995 (1997), concerns the interpretation of a statute,[5] in that case, our Supreme Court set out, at length, the common-law rule with regard to standing to bring suit against a charitable entity, which controls the issues here. "At common law, a donor who has made a completed charitable contribution, whether as an absolute gift or in trust, had no standing to bring an action to enforce the terms of his or her gift or trust unless he or she had expressly reserved the right to do so. Where property is given to a charitable corporation and it is directed by the terms of the gift to devote the property to a particular one of its purposes, it is under a duty, *enforceable at the suit of the [a]ttorney [g]eneral,* to devote the property to that purpose. . . . At common law, it was established that [e]quity will afford protection to a

[5] General Statutes §§ 45a-526 through 45a-534 are commonly known as the Uniform Management of Institutional Funds Act.

donor to a charitable corporation in that *the [a]ttorney [g]eneral may maintain a suit* to compel the property to be held for the charitable purpose for which it was given to the corporation. . . . The general rule is that charitable trusts or gifts to charitable corporations for stated purposes are [enforceable] at the instance of the [a]ttorney [g]eneral. . . . It matters not whether the gift is absolute or in trust or whether a technical condition is attached to the gift." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 5–7; see also 4A A. Scott, Trusts (4th Ed. Fratcher 1989) § 348.1.

"[T]he donor himself has no standing to enforce the terms of his gift when he has not retained a specific right to control the property, such as a right of reverter, after relinquishing physical possession of it. . . . As a matter of common law, when a settlor of a trust or a donor of property to a charity fails specifically to provide for a reservation of rights in the trust or gift instrument, neither the donor nor his heirs have any standing in court in a proceeding to compel the proper execution of the trust, except as relators. . . . There is no such thing as a resulting trust with respect to a charity. . . . Where the donor has effectually passed out of himself all interest in the fund devoted to a charity, neither he nor those claiming under him have any standing in a court of equity as to its disposition and control." (Citations omitted; internal quotation marks omitted.) *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport,* supra, 243 Conn. 7–8.

The trial court found the facts noted previously in this opinion and concluded that if Sterling were alive today, he would have no right to enforce conditions of his gift, and that, therefore, his heir and successor lacks standing to bring this suit, as well. We agree. See id., 5–6.

For the same reasons, the trial court also concluded that the plaintiff alumni donors also lack standing as contributors of unrestricted charitable gifts to their alma mater and nothing about the fact that they are graduates of the divinity school gives them standing. We agree with that conclusion as well. See id.

With regard to the third group of plaintiffs, the students, the trial court determined that they also lack standing. We agree with the trial court and hold that, absent special injury to a student or his or her fundamental rights, students do not have standing to challenge the manner in which the administration manages an institution of higher education. See *Trustees of Dartmouth College* v. *Woodward*, 17 U.S. 518, 641, 4 S. Ct. 526, 4 L. Ed. 629 (1819);[6] *Miller* v. *Alderhold*, 228 Ga. 65, 184 S.E.2d 172 (1971). The plaintiff students lack standing because they alleged no injuries to themselves or to any of their fundamental rights, collectively or individually.

We hold, therefore, that the trial court properly concluded that, although the plaintiffs are sincere in their efforts to maintain the divinity school as a leader in theological education and preparation for the Christian ministry and they acted in good faith based on motives that are beyond question, the plaintiffs, as a matter of law, lack standing to adjudicate the equitable remedies they seek.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] "[S]tudents are fluctuating, and no individual among our youth has a vested interest in the institution, which can be asserted in a court of justice." *Trustees of Dartmouth College* v. *Woodward*, supra, 17 U.S. 641.